UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Kevin Fernandez

    v.                           Civil No. 17-cv-226-LM

State of Nevada et al.[1]

## REPORT AND RECOMMENDATION

Before the court is New Hampshire State Prison inmate Kevin Fernandez's complaint (Doc. No. 1) under 42 U.S.C. § 1983. The complaint (Doc. No. 1) is before this court for preliminary review, pursuant to 28 U.S.C. § 1915A(a) and LR 4.3(d)(1). Also before the court are plaintiff's motions for: a temporary restraining order and preliminary injunction (Doc. No. 3), the issuance of summonses (Doc. No. 4), and an extension of the deadline to serve defendants (Doc. No. 15).

---

[1] Plaintiff names the following defendants to this action: the State of Nevada; the Nevada Department of Corrections ("NDOC"); NDOC Program Officer I/Interstate Compact Coordinator James Maxey; NDOC Offender Management Division ("OMD") Correctional Program Supervisor Nancy Flores; NDOC OMD Administrator Deal, whose first name is unknown ("FNU"); the State of New Hampshire; the New Hampshire Department of Corrections ("NHDOC"); NHDOC Nurse C. Domenea; New Hampshire State Prison Medical Director Dr. FNU Fetter; NHDOC Maj. FNU Fouts; NHDOC Security Supervisor Chris Kench; NHDOC Classifications Supervisor Kimberly LaCasse; NHDOC Nursing Supervisor Ryan Landry; NHDOC Lt. FNU Liette; NHDOC Medical Director Paula Mattis; NHDOC Case Manager G. McDonough; NHDOC Unit Manager R. McGrath; and NHDOC Commissioner William L. Wrenn. Each individual defendant is sued in his or her personal and official capacities.

## **Preliminary Review**

### I.    **Standard**

In determining whether a pro se pleading states a claim, the court construes the pleading liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Disregarding any legal conclusions, the court considers whether the factual content in the pleading and inferences reasonably drawn therefrom, taken as true, state a claim to relief.  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

### II.   **Background**[2]

#### A.    **Classification**

On July 16, 2014, Fernandez entered into a settlement agreement ("Settlement Agreement") with the State of Nevada. The Settlement Agreement resolved six lawsuits Fernandez had filed in the District of Nevada, and one appeal Fernandez had filed in the Ninth Circuit Court of Appeals.[3]  See Global

---

[2]In conducting its preliminary review of this matter, the court considers the factual assertions in all of Fernandez's filings to date.

[3]The cases resolved by the Settlement Agreement are: Fernandez v. Whorton, No. 13-15583 (9th Cir.); Fernandez v. Whorton, No. 3:06-cv-628-LRH-WGC (D. Nev.); Fernandez v. Nevada, No. 3:10-cv-373-LRH-VPC (D. Nev.); Fernandez v. Centric, No. 3:12-cv-401-LRH-WGC (D. Nev.); Fernandez v. Baker, No. 3:13-cv-276-RCJ-VPC (D. Nev.); Fernandez v. Almona, No. 3:13-cv-624-RCJ-

Settlement Agreement (Doc. No. 3-1, at 70-77).  Fernandez alleges that, as part of the Settlement Agreement, Nevada and the NDOC agreed to solicit at least five states to which Nevada could transfer Fernandez under the Interstate Corrections Compact ("ICC"),[4] to determine if any of those states would accept a transfer of Fernandez.  Fernandez was ultimately transferred to the NHSP on November 9, 2015, where he remains.

On December 9, 2015, Fernandez was classified at the NHSP as a "C-3" medium custody inmate.  At the end of February 2016, Fernandez was assessed for reclassification to "C-2" minimum custody status but was denied C-2 status because he would not be paroled to live in New Hampshire and does not have family in New Hampshire.

On March 3, 2016, Fernandez initiated an administrative appeal of the February 2016 denial of C-2 status.  On March 7, 2016, NHDOC Classifications Supervisor Kimberly LaCasse told Fernandez that he would not be reclassified as a C-2 inmate in New Hampshire if he was not paroling to New Hampshire, as C-2 inmates are eligible for placement in a halfway house, and those beds were needed for inmates who were going to transition to

---

VPC (D. Nev.); Fernandez v. Cox, No. 3:14-cv-154-MMD-WGC (D. Nev.).

[4]The ICC permits inmates to be transferred between states for confinement.  The ICC has been adopted by New Hampshire, see N.H. Rev. Stat. Ann. § 622-a et seq., and by Nevada, see Nev. Rev. Stat. Ann. § 215A et seq.

parole in New Hampshire.  LaCasse also told Fernandez "that if he was unhappy with the decision he could simply go back to Nevada."  Doc. No. 1, at 11.  Fernandez appealed the denial of his classification appeal to the NHDOC Commissioner on March 8, 2016, but received no response.  On April 1, 2016, LaCasse directed that Fernandez to be returned to Nevada.  For reasons that are not stated in the record, Fernandez was not returned to Nevada.

On August 5, 2016, Fernandez was again evaluated for C-2 status at the NHSP.  With the approval of defendants NHDOC Unit Manager R. McGrath, NHDOC Case Manager G. McDonough, and LaCasse, Fernandez was conditionally granted C-2 status.  The conditions of attaining C-2 status included Nevada's consent to Fernandez's placement on minimum custody status.  Fernandez contacted NDOC ICC Coordinator James Maxey and NDOC Correctional Program Supervisor Nancy Flores, and advised them that he would take legal action against them if they denied consent to his reclassification to C-2 status at the NHDOC.

In September 2016, Fernandez provided his parole plan and information about his family to LaCasse and advised LaCasse that Nevada's approval for his transfer to C-2 status was not necessary under the ICC.  LaCasse responded that Fernandez could not be paroled in New Hampshire if he had no family in the state, and thus could not be placed in a halfway house, but that

4

with Nevada's permission, he still could be reclassified as a C-2 minimum security inmate.

On October 4, 2016, defendant Maxey advised NHDOC employee Jensine Hilliard "that Nevada law prohibited him from approving C-2 status for Plaintiff" pursuant to Nev. Rev. Stat. §§ ("NRS") 176A.780, 209.481.[5]  On October 12, 2016, Fernandez was reclassified to "C-3" status.  Fernandez alleges that the sole reason for his reclassification is that Nevada had not consented to his reclassification to C-2.

On October 28, 2016, Fernandez administratively appealed his reclassification to C-3 status.  On November 2 or 3, 2016, LaCasse again advised Fernandez that if he is unhappy with the NHDOC's classification decision he could return to Nevada. Fernandez states he understood LaCasse's statement as a threat to return him to Nevada if he continued to complain about being denied C-2 status.

Fernandez filed an appeal with the NDOC, appealing the withholding of consent to Fernandez receiving C-2 status, but did not receive a response.  Fernandez petitioned NHDOC officials for reconsideration of the denial of C-2 status.

---

[5]NRS 209.481 states, in relevant part, that the NDOC "Director shall not assign any person to an institution or facility of minimum security if the prisoner . . . has ever been convicted of a sexual offense that is punishable as a felony." NRS 176A.780 provides exceptions to NRS 209.481 that do not appear to apply to Fernandez's situation.

LaCasse declined to reconsider the decision without Nevada's approval.

On April 3, 2017, Fernandez was again denied C-2 status by NHDOC officials due to the NDOC's lack of consent to that security classification.  As a result of not being reclassified to C-2 status, Fernandez alleges that he did not obtain C-2 privileges and better conditions of confinement.  Further, Fernandez claims that obtaining C-2 status would have increased his opportunity to obtain parole.

### B.    Legal Materials

On December 2, 2015, several weeks after Fernandez was transferred to the NHDOC, the NDOC mailed Fernandez's fifteen boxes of legal material to him at the NHDOC.  Those materials contained documents concerning Fernandez's criminal history, parole records, research materials and civil actions that were either active or were the subject of settlement agreements.

Shortly after Fernandez's legal materials arrived in New Hampshire, NHDOC Maj. Fouts advised Fernandez that his legal materials would have to be sent out of the NHSP, as they would not be stored at that facility.  On December 16, 2015, McGrath and NHDOC Lt. Brown gave Fernandez a yellow tote in which he could keep legal materials.  When Fernandez advised NHDOC officials that the NDOC was supposed to hold onto his legal materials, those officials arranged for Fernandez's legal

materials to be stored in the property room until the issue was resolved.  NHDOC officials then contacted the NDOC to advise them that the cost of mailing the materials to the NDOC was over $1100, which would have to be paid, in advance, by the NDOC.  In January 2016, NHDOC Cpl. Sauerheber advised Fernandez that the NDOC had agreed to pay for Fernandez's legal materials to be mailed there.  Fernandez confirmed that information with Flores on February 4, 2016.  On February 26, 2016, however, Flores wrote to Fernandez and stated that the NDOC would neither pay for mail to, nor store his legal files at, the NDOC.  See Feb. 26, 2016 Letter (Doc. No. 3-1, at 6).

On February 29, 2016, Fernandez sent an Inmate Request Slip ("IRS") to Sauerheber to grieve the NDOC's refusal to pay for shipping and storage of his legal materials, and asked that the NHDOC maintain his files until he could exhaust his remedies. See Feb. 29, 2016 IRS (Doc. No. 3-1, at 7).  Sauerheber agreed, conditioned on administrative approval.  See Mar. 3, 2016 IRS Resp. (Doc. No. 3-1, at 7).  On February 29, 2016, Fernandez also wrote to the property room and to NHSP Warden Michael Zenk, stating that "any attempt to destroy, remove, or deny plaintiff his boxes would be construed as a violation of his First and Fourteenth Amendment rights."  Doc. No. 1, at 28.

On March 4, 2016, the NHDOC emailed Maxey to let him know that Fernandez was appealing the NDOC's denial of postage and

storage.  On March 5, 2016, Fernandez sent an IRS to Zenk
seeking authorization to store his legal materials at the prison
while he exhausts his remedies.  On March 15, 2016, the NHDOC
advised Maxey that if the NDOC does not make a decision
concerning Fernandez's legal materials, that the NHDOC may
request that Fernandez be returned to the NDOC.  On that date,
Maxey wrote to the NHDOC requesting an address other than an
NDOC facility to which the boxes could be mailed.

On April 1, 2016, Fernandez wrote to Fouts and asked for
permission to retrieve some documents from his legal materials
that he needed for legal cases.  On April 11, 2016, Fernandez
again requested access to his legal materials when Fouts failed
to respond to his first request.  See Apr. 11, 2016 IRS (Doc.
No. 3-1, at 10).  On April 12, 2016, Lacasse and Fouts ordered
that Fernandez be returned to Nevada and contacted Maxey to ask
him to make those arrangements.

On April 14, 2016, Fouts responded to Fernandez, stating:

> We (N.H.) do not store legal work and do not have
> procedures for inmates to access such files.  We are
> currently pushing Nevada very hard to agree to a
> disposition on these boxes.  If they fail to figure
> this out, they will likely be looking for another
> state for you and your files.  The only agreement that
> I would consider making directly with you would be for
> you to have a one time access to this material in
> which you would pull what you need (to keep within
> reasonable space in your cell) and then to have the
> balance sent out or destroyed.  Let me know if you
> want to do this.  Until this time, we will keep
> pushing Nevada.

Apr. 14, 2016 IRS Resp. (Doc. No. 3-1, at 10) (emphasis in
original).

On April 19, 2016, Fernandez wrote to Maxey and provided an
address to which the boxes could be mailed at NDOC expense.  On
that date, Fernandez also wrote to Fouts and told him that he
had written to Maxey to state that, in exchange for maintaining
the two legal boxes of materials Fernandez had in his
possession, and the ability to go through his other materials to
retrieve documents to fill the yellow tote he had been provided
at the NHDOC, that he would shred some materials and mail out
the remaining boxes at his own expense, if the NHDOC would
promise not to transfer him back to Nevada.  On May 6, 2016,
Fouts advised Fernandez that the NDOC had declined to prepay for
postage to mail out Fernandez's legal materials, and that the
NHDOC was close to returning Fernandez, and his legal materials,
to Nevada.  See May 6, 2016 IRS Resp. (Doc. No. 3-1, at 20).

On May 7, 2016, Fernandez again wrote to Fouts and
reiterated his offer to shred some documents and keep other
documents in his yellow tote in order to reduce the cost of
postage.  See May 7, 2016 IRS (Doc. No. 3-1, at 25).  On May 12,
2016, Fouts wrote to Fernandez and stated:

> Your unit will be working with you to do the
> following: sort through your legal property; shred the
> documents of your choosing; keep (in an (1) approved
> container) the documents of your choosing; and pack
> the documents of your choosing into boxes that will be
> mailed out.  You will be responsible for the cost of

> this mailing and you will need to seek reimbursement
> from NV yourself.

May 12, 2016 IRS Resp. (Doc. No. 3-1, at 25).  On May 17, 2016,

Fernandez wrote to Brown to begin sorting through his legal

materials.  On May 20, 2016, Fernandez wrote to Fouts to confirm

that he would begin the process of sorting through his legal

materials.  On June 23, 2016, Fernandez updated Fouts on his

progress, and his difficulties in completing the process to

which they had agreed.  On July 24, 2016, Fouts advised

Fernandez that he was working with staff so that the process

would be finished.

On July 27, 2016, Fouts ordered an email sent to Maxey and

Flores to rescind the request that Nevada pick up Fernandez.  On

July 28, 2016, Fernandez advised Fouts that he had shredded 11

bankers' boxes worth of documents, and was ready to mail the two

remaining boxes, along with another box of property, to his

family, for a total cost of $261.33.  That amount was deducted

from Fernandez's inmate account on September 27, 2016.

Fernandez was allowed, pursuant to his agreement with Fouts, to

keep four cubic feet of legal material in his cell in a yellow

tote provided to him by the prison.

Just over two weeks later, on October 13, 2016, however,

McGrath ordered Fernandez to further reduce his legal files to a

total of two cubic feet.  Fernandez attempted to persuade NHDOC

officials to honor the agreement he had entered with Fouts, and

with which Fernandez had entirely complied, without success.

On October 14, 2016, Fernandez sent an IRS to Fouts, arguing that their agreement should be kept, characterizing the agreement as a contract.  On October 20, 2016, NHDOC Lt. Liette responded to Fernandez "stating that the agreement was now null and void because a policy change on January 26, 2016 changed and thus the agreement was changed."  Doc. No. 1, at 26.  Fernandez again wrote to Fouts, who responded, in part:

> This agreement (not contract) was made in good faith
> prior to the specific directive was issued by the
> Commissioner that clarified the standard.  I do not
> have the authority to offer exceptions to a policy.
> You must comply with the Commissioners January 2016
> directive as detailed in his addition to [NHDOC Policy
> and Procedure Directive] 9.02.

Oct. 24, 2016 IRS Resp. (Doc. No. 3-1, at 35).  On October 26, 2016, Fernandez agreed to reduce his legal material to two cubic feet.  Fernandez asserts that he was forced to destroy approximately half of the legal materials he had previously been allowed to retain.  On December 14, 2016, Zenk testified under oath in another case before this court, that after August 1, 2016, he had advised NHSP staff that inmates may request exceptions to the limit on the volume of legal materials that had been added to NHDOC Policy and Procedure Directive ("PPD") 9.02(N) by the Commissioner in January 2016.  See Jan. 30, 2017 R&R, Towle v. Warden, No. 15-cv-117-SM (D.N.H.) (ECF No. 56, at 7-8).

11

On April 20, 2017, Fernandez had a parole hearing. Fernandez claims that, because he had been forced to reduce his legal materials, he did not have documents he needed as evidence, and was thus prevented from presenting relevant evidence to the Nevada Parole Board that would have supported a non-frivolous argument for granting him parole.  Fernandez was denied parole.  Fernandez further asserts that he was impeded from properly preparing his appeal from the denial of parole due to the lack of access to critical and relevant legal documents.

Additionally, Fernandez claims that he is currently litigating multiple § 1983 cases and a case in the Nevada state courts, but is unable to keep new legal documents pertaining to these matters without discarding other necessary documents, as he has already amassed the full volume of legal material allowed to him by NHDOC policy.  Fernandez states that, as a result, his ability to litigate his pending lawsuits has been impaired, and his opportunity to obtain parole in the future has been reduced.

### C.    <u>Toxicology Evidence</u>

Fernandez asserts that he is the pro se plaintiff in two cases filed in the District of Nevada: <u>Fernandez v. Cox et al.</u>, No. 3:14-cv-578-MMD-VPC (D. Nev., filed Nov. 12, 2014) ("<u>Cox</u>"), and <u>Fernandez v. Baca et al.</u>, No. 3:16-cv-350-RCJ-WGC (D. Nev., filed June 20, 2016).  In each of these cases, plaintiff states, he has asserted that NDOC employees were tampering with his food

while he was incarcerated in Nevada.  Fernandez states that, on
December 16, 2015, Fernandez asked NHDOC Nurse Domenea for
toxicology testing, to obtain evidence he needed to prosecute
his food tampering claims.  On December 17, 2015, Domenea and
Fouts denied the request.  Fouts told Fernandez that he would
need a court order to obtain the testing he sought.

     On August 16, 2016, Fernandez had his own privately-
retained toxicologist contact the NHSP Medical Records
Supervisor to set up an appointment for an examination to be
conducted on Fernandez, at Fernandez's expense, pursuant to
NHDOC Policy and Procedure Directive ("PPD") 6.53.  On August
22, 2016, NHSP Medical Director Dr. Fetter denied that request.
Nonetheless, on August 30, 2016, plaintiff met with NHDOC Nurse
Ryan Landry to try to arrange the appointment with his retained
toxicologist.  Landry told Fernandez he would need a court order
to obtain such an examination.

     On September 1, 2016, Fernandez again wrote to Fetter and
Landry to request that he be given an appointment to be examined
by his own toxicologist, explaining that time was of the essence
in obtaining the requested testing.  Fernandez's request was
denied.  On September 15, 2016, plaintiff filed a grievance in
which he asserted that he had a right to obtain evidence, and
that the denial of the toxicologist examination he requested
would thus violate his federal constitutional rights and rights

13

under state law.  On October 4, 2016, NHDOC Medical Director
Paula Mattis denied Fernandez's grievance, reiterating that a
court order would be necessary to obtain the testing sought.  On
October 13, 2016, Fernandez unsuccessfully appealed Mattis's
denial of his grievance to NHDOC Commissioner William Wrenn.

On December 1, 2016, Fernandez filed Fernandez v. Wrenn,
No. 217-2016-cv-723 (N.H. Super. Ct., Merrimack Cty.) in state
court, seeking to obtain a toxicology examination.  According to
Fernandez, the parties in that case entered into a settlement
agreement on February 28, 2017 that allowed for a toxicology
examination to occur.  The Superior Court approved the
settlement on March 1, 2017.  On March 22, 2017, the plaintiff
was examined by his toxicologist, who collected samples to be
tested.  The test results were negative for evidence of food
tampering.

Fernandez claims that the defendants' actions delayed the
collection and testing of biological samples that, to be
effective, would have had to have been collected within one year
of the food tampering Fernandez was attempting to demonstrate.
Fernandez claims that he began to request toxicologist testing
within the one-year time frame, but that the defendants' actions
resulted in delays in collecting the evidence until such
evidence could no longer be obtained.  Fernandez states that as
a result, he was denied the primary evidence supporting his non-

frivolous food tampering claims.

### III. **Claims**[6]

Fernandez has asserted the following claims in his

complaint:

1.    Defendants McGrath, Lacasse, and McDonough denied
Fernandez minimum custody/C-2 status on October 12, 2016,
in violation of:

a.    Fernandez's Fourteenth Amendment right to equal
protection of the laws;

b.    Fernandez's Fourteenth Amendment right to due
process, to the extent the defendants failed to comply
with the requirements of N.H. Admin. Code COR 401-03,
concerning the classification of NHDOC inmates;

c.    Fernandez's right under the ICC to have decisions
concerning his classification made by NHDOC
authorities; and

d.    NHDOC policies, including PPD 7.14 and the NHDOC
Classifications Handbook.

2.    Defendant Lacasse violated Fernandez's First Amendment
rights to free speech and to petition the government for a
redress of grievances, when she threatened to have
Fernandez returned to Nevada if he continued to complain
about his classification, and in retaliation for
Fernandez's filing of administrative grievances.

3.    NDOC defendants Maxey, Flores and Deal failed to
approve Fernandez's classification to minimum custody/C-2
status, in violation of:

a.    Fernandez's First Amendment rights to free speech
and to petition the government for a redress of
grievances, in that they denied consent to Fernandez's
C-2 classification, in retaliation for Fernandez's
September 26, 2016 letter to Maxey and Flores,

---

[6]In his complaint, Fernandez has identified his claims as
nine "causes of action."  For clarity, the court will refer to
the claims as identified and numbered in this Report and
Recommendation, for all purposes.

threatening to take legal action if they did not
consent to his reclassication;

b.    the Settlement Agreement; and

c.    the ICC.

4.    Defendants Fouts, McGrath, and Liette violated
Fernandez's First Amendment right to petition the
government for a redress of grievances and right of access
to the courts, in that they denied Fernandez sufficient
access to his legal materials, and in doing so:

a.    Defendants impeded Fernandez's ability to
successfully seek parole in Nevada and to appeal a
parole denial in that state; and

b.    Defendants interfered with Fernandez's ability to
obtain relief in Fernandez v. Cox, No. 3:14-cv-578-
MMD-VPC (D. Nev.) ("Cox"), and Fernandez v. Baca, No.
3:16-cv-350-RCJ-WGC (D. Nev.) ("Baca").

5.    Defendant Fouts, McGrath, and Liette violated
Fernandez's First Amendment rights to free speech and to
petition the government for a redress of grievances, when,
in April 2016, Fouts directed that Fernandez be returned to
Nevada, in retaliation for Fernandez's NHDOC administrative
grievances about being denied access to his legal
materials, and his threats to initiate legal action against
NHDOC officials.

6.    Defendants Fouts, McGrath, Liette, the NHDOC, and the
State of New Hampshire failed to perform their obligations
under a contract between Fouts, on behalf of the New
Hampshire defendants, and Fernandez, concerning the
disposition of Fernandez's legal materials, and are liable
for breach of contract under state law.

7.    Defendants Domenea, Fouts, Fetter, Landry, Mattis,
Kench, and Wrenn did not allow Fernandez to obtain a timely
testing of biological specimens, resulting in the loss of
toxicological evidence essential to the litigation of two
lawsuits in which Fernandez was the pro se plaintiff, Cox
and Baca, in violation of:

a.    Fernandez's First Amendment rights to
meaningfully access the courts and to petition the
government for a redress of grievances;

16

           b.    Fernandez's Fourteenth Amendment equal protection
     rights; and

           c.    PPD 6.53.

**IV.  <u>Discussion</u>**

     **A.    <u>Classification Claims</u>**

          1.    <u>Equal Protection (Claim 1(a))</u>

     Fernandez alleges that the defendants, in denying him C-2
status on October 12, 2016, violated his Fourteenth Amendment
right to equal protection.  "'The Equal Protection Clause
contemplates that similarly situated persons are to receive
substantially similar treatment from their government.'"  <u>Davis
v. Coakley</u>, 802 F.3d 128, 132 (1st Cir. 2015) (citation
omitted).  "To establish an equal protection claim, a plaintiff
needs to allege facts showing that '(1) the [plaintiff],
compared with others similarly situated, was selectively
treated; and (2) that such selective treatment was based on
impermissible considerations such as race, religion, intent to
inhibit or punish the exercise of constitutional rights, or
malicious or bad faith intent to injure [the plaintiff].'"  <u>Id.</u>
at 132-33 (citation omitted).

     Fernandez's allegations fail to demonstrate that any prison
official discriminated against him based on his membership in
any particular protected class or group.  Further, stripped of
legal conclusions, Fernandez's assertions do not show that, to

                              17

the extent he has been treated differently than any other inmate, he was similarly situated to such inmate in all relevant respects.  Accordingly, Fernandez has failed to state a Fourteenth Amendment equal protection claim upon which relief might be granted, and the district judge should dismiss Claim 1(a).

## 2.  Due Process (Claim 1(b))

Fernandez claims that his due process rights were violated when the defendants denied him minimum custody/C-2 status, as it impairs his ability to obtain parole.  "The protections of the Due Process Clause of the Fourteenth Amendment are triggered if there is a deprivation of a protected [liberty] interest . . . ."  Porter v. N.H. Dep't of Corr., No. 13-cv-268-PB, 2013 U.S. Dist. LEXIS 184669, at *6-*7, 2014 WL 457941, at *3 (D.N.H. Nov. 22, 2013), R&R approved, No. 13-cv-268-PB, 2014 U.S. Dist. LEXIS 13700, 2014 WL 457941, at *1 (D.N.H. Feb. 4, 2014); see also González-Fuentes v. Molina, 607 F.3d 864, 886 (1st Cir. 2010).  "The liberty interests of prisoners are limited to 'freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  Restucci v. Clarke, 669 F. Supp. 2d 150, 157 (D. Mass. 2009) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

> With respect to prisoner classification, as a general
> principle, there is no constitutional right which

18

> entitles an inmate to a particular institutional
> classification, nor is there a right to due process in
> the classification process.  Similarly, with respect
> to prisoner transfers from one institution to another,
> as a general matter, prisoners do not have a
> constitutional right to placement in a particular
> institution.

Riley v. O'Brien, No. 16-11064-LTS, 2016 U.S. Dist. LEXIS

120039, at *17-*18, 2016 WL 8679258, at *6 (D. Mass. Sept. 6,

2016).  See also Meachum v. Fano, 427 U.S. 215, 224-25 (1976)

(Due Process Clause does not limit inter-prison transfer even

when the new institution is much more disagreeable); Palmigiano

v. Mullen, 491 F.2d 978, 980 (1st Cir. 1974) (absent unusual

circumstances, inmates do not have a constitutional right to any

particular security classification).  Classification decisions

by prison officials, without more, do not give rise to a

cognizable claim for relief.  See Olim v. Wakinekona, 461 U.S.

238, 245-46 (1983); Moody v. Daggett, 429 U.S. 78, 88 n.9

(1976); Meachum, 427 U.S. at 225.

Fernandez has not pleaded allegations sufficient to state a

claim that keeping him in medium custody/C-3 status, or revoking

his conditional reclassification to minimum custody/C-2 status,

resulted in any "atypical and significant hardship" in relation

to "the ordinary incidents of prison life," or "exceed[ed] the

sentence" in any "unexpected manner."  Sandin, 515 U.S. at 484.

Because Fernandez did not have a protected liberty interest in

minimum custody/C-2 status, he cannot assert a cognizable due

process claim for the denial or revocation of that status, and the district judge should dismiss Claim 1(b).

## B.    Violation of ICC (Claims 1(c) and 3(c))

Fernandez asserts that, pursuant to the contract between Nevada and New Hampshire concerning his incarceration in New Hampshire, New Hampshire is required to notify Nevada of its intent to classify him as a minimum custody/C-2 inmate, and to consider Nevada's objection, but that the final classification decision rests with New Hampshire.  Fernandez alleges that when NHDOC officials contacted NDOC officials to obtain their position concerning Fernandez's classification status, that NDOC officials stated that Fernandez was not eligible for such status under Nevada law.  Fernandez first claims that the NDOC officials, in their response to the NHDOC, improperly relied on Nevada statutes that, Fernandez claims, are not applicable to his situation.  Further, he claims that the NHDOC, rather than exercise its ability under the ICC to make the final decision concerning Fernandez's classification, improperly relinquished the final decision-making power to the NDOC by conditioning the grant of C2 status on the NDOC's consent.  Fernandez asserts that the defendants are liable to him for these acts, as they violate the ICC.

The ICC, as adopted by New Hampshire and Nevada, is not federal law, and does not create a constitutionally protected

liberty interest.  See Thomasson v. Premo, 621 F. App'x 426, 426-27 (9th Cir. 2015) (citation omitted).  Furthermore, Fernandez is neither a signatory to, nor a third party beneficiary of the ICC.  See Graves v. Warner, No. 2:16-CV-0175-TOR, 2017 U.S. Dist. LEXIS 195292, at *13, 2017 WL 5760869, at *5 (E.D. Wash. Nov. 28, 2017); see also Kou Lo Vang v. Angelone, 37 F.3d 1507, 1994 U.S. App. LEXIS 27558, at *6, 1994 WL 533568, at *2 (9th Cir. Sep. 30, 1994) (unpublished table decision). Accordingly, a violation of the ICC does not provide grounds for a claim asserted under 42 U.S.C. § 1983, or state law.  The district judge should, therefore, dismiss Claims 1(c) and 3(c).

### C.   Violation of NHDOC Policies (Claims 1(d) and 7(c))

Fernandez asserts claims based on the defendants' violation of NHDOC policies.  "An assertion that prison officials failed to follow prison rules or policies does not set forth a constitutional claim."  McFaul v. Valenzuela, 684 F.3d 564, 579 (5th Cir. 2012); see Querido v. Wall, C.A. No. 10-098 ML, 2010 U.S. Dist. LEXIS 139201, at *14, 2010 WL 5558915, at *3 (D.R.I. Dec. 8, 2010), R&R adopted, 2011 U.S. Dist. LEXIS 1882, 2011 WL 63503 (D.R.I. Jan. 7, 2011).  Accordingly, Fernandez cannot state a claim for relief on the basis of the defendants' violation of prison policies, and the district judge should dismiss Claims 1(d) and 7(c).

D.   **Retaliation (Claims 2, 3(a), 5)**

Fernandez alleges that NHDOC defendants Lacasse, McGrath, Fouts, and Liette threatened to transfer Fernandez back to Nevada, in retaliation for his filing of grievances and threats to file lawsuits.  Fernandez further alleges that NDOC defendants Maxey, Flores, and Deal retaliated against him for filing grievances and threatening legal action by refusing to consent to Fernandez's reclassification from a medium to a minimum security classification at the NHSP.

To state a First Amendment retaliation claim, an inmate must allege: (1) that the conduct which led to the retaliation was protected by the First Amendment; (2) that he suffered adverse action at the hands of the prison officials; and (3) that there was a causal link between the exercise of his First Amendment rights and the adverse action taken. See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).  De minimis reactions to protected speech are not actionable. See Morris v. Powell, 449 F.3d 682, 685–86 (5th Cir. 2006).  An adverse act taken in response to protected conduct is not de minimis, however, if it would deter an individual of ordinary firmness from exercising his or her First Amendment rights.  See id.; see also Starr v. Dube, 334 Fed.Appx. 341, 342–43 (1st Cir. 2009); Vazquez-Castro v. Office of Gen. Counsel, No. 17-CV-072-PB, 2017 WL 4286587, at *3 (D.N.H. Sept. 12, 2017), R&R approved, No. 17-CV-00072-PB,

2017 WL 4286210 (D.N.H. Sept. 26, 2017).  A transfer from a prison in one state, to a prison in another state, may constitute a non-de minimis adverse act where the transfer would effect some hardship on the inmate.  See Hannon, 645 F.3d at 49.

Fernandez was not actually transferred to Nevada, and the threats to transfer him were not realized.  Even if Fernandez had been transferred, however, he has failed to allege why such a transfer would cause him any hardship.  He has not alleged that he would be subjected to significantly worse conditions of confinement, that the transfer would separate him from his family, or that his transfer would interfere with any pending litigation.  Accordingly, the court cannot find that statements NHDOC employees made to Fernandez, indicating that they were going to transfer him to Nevada, which were shortly thereafter rescinded, and did not result in Fernandez's transfer, amount to de minimis adverse acts, to the extent such acts were adverse at all.  Fernandez has failed to assert sufficient facts to support a retaliation claim, and Claims 2, 3(a), and 5 should therefore be dismissed.

### E.    Violation of Settlement Agreement (Claim 3(b))

Fernandez alleges that NDOC defendants Maxey, Flores, and Deal violated the Settlement Agreement by refusing to consent to Fernandez's reclassification to minimum security status.  To the extent that Fernandez's complaint alleges that defendants have

failed to perform their obligations under the Settlement
agreement, it fails to allege the abridgement of a
constitutional right or a federal law.  See Kokkonen v. Guardian
Life Ins. Co. of Am., 511 U.S. 375, 378 (1994) (enforcement of
settlement agreement "requires its own basis for jurisdiction").
Further, even if the District of Nevada had retained
jurisdiction over enforcement of the settlement agreement, and
the record does not reveal that this is the case, absent an
independent basis for federal jurisdiction, this court should
decline to exercise supplemental jurisdiction over this claim
under 28 U.S.C. § 1367.  Because Fernandez has not demonstrated
a basis for this court to exercise federal subject matter
jurisdiction over a claim based on defendants' violation of the
Settlement Agreement, the district judge should dismiss Claim
3(b), without prejudice to Fernandez's ability to seek to
enforce this claim in a court of competent jurisdiction.

### F.   Legal Materials (Claims 4 and 6)

#### 1.   Access to the Courts

Fernandez alleges that being forced to destroy or send his
legal materials out of the NHDOC violated his First Amendment
right to meaningfully access the courts.  To state such a claim,
Fernandez must show "that an actionable claim has been lost or
rejected or that presentation of the claim is currently being
prevented" due to the deprivation of his legal materials.

24

Guglielmo v. N.H. State Prison, 111 F.3d 122, 1997 WL 205290, at
*1, 1997 U.S. App. LEXIS 8616, at *2-*3 (1st Cir. Apr. 25, 1997)
(unpublished table decision) (citing Lewis v. Casey, 518 U.S.
343 (1996)).  "The injury requirement is not satisfied by just
any type of frustrated legal claim." Lewis, 518 U.S. at 354.
Inmates are only denied access to the courts if they are injured
in their attempt to pursue a direct appeal of a criminal
conviction, a habeas petition, or civil rights actions taken "to
vindicate 'basic constitutional rights.'" Id. (citation
omitted).  "Impairment of any other litigating capacity is
simply one of the incidental (and perfectly constitutional)
consequences of conviction and incarceration." Id. at 355
(emphasis in original).

### a.   Parole (Claim 4(a))

Fernandez alleges that he was forced to destroy or send out
of the prison documents he needed to support his application for
parole from his NDOC sentence.  As a result, Fernandez states,
he was denied parole, and lost the appeal of his parole denial.

An application for parole is neither a challenge to a
prisoner's conviction or sentence nor a challenge to the
constitutionality of the conditions of confinement.  See Perotti
v. O'Boyle, No. 1:16 CV 2347, 2017 WL 395125, at *4, 2017 U.S.
Dist. LEXIS 11793, at *11 (N.D. Ohio Jan. 26, 2017) (parole
revocation hearing not encompassed within First Amendment's

25

right of access to courts), aff'd, No. 17-3334 (6th Cir. Nov.
29, 2017).  Accordingly, a hindrance to the successful pursuit
of parole proceedings is not a basis for a viable claim for
denial of access to the courts.  See id.; cf. Davis v. Cox, No.
3:14-CV-00205-RCJ-WGC, 2015 U.S. Dist. LEXIS 77862, at *11-*12,
2015 WL 3764950, at *5 (D. Nev. May 26, 2015) ("there is no
authority to support that a revocation of parole constitutes
'actual injury' for purposes of an access to courts claim"), R&R
approved, 2015 U.S. Dist. LEXIS 77861, 2015 WL 3764950, at *1
(D. Nev. June 16, 2015), appeal dismissed, No. 15-16350 (9th
Cir. Sept. 1, 2015).  The district judge, therefore, should
dismiss Claim 4.

### b.    Civil Cases (Claim 4(b))

Fernandez generally alleges that the deprivation of his
legal materials interfered with his ability to litigate civil
lawsuits he has filed, but he does not indicate what specific
injury was done to either case because he lacked all of his
legal materials.  Accordingly, Fernandez has failed to state a
claim for the denial of access to the courts upon which relief
might be granted concerning his civil lawsuits, and the district
judge should dismiss Claim 4(b).

### 2.    Breach of Contract (Claim 6)

Fernandez's breach of contract claims arise under state
law.  The district judge should decline to exercise supplemental

jurisdiction over Fernandez's breach of contract claim, relating
to Fernandez's access to legal materials at NHDOC.  That claim
does not arise out of the same transaction as the claims the
court has authorized to proceed in this matter.  The issues and
evidence relevant to the breach of contract claim would
necessarily exceed the scope of issues and evidence relevant to
the claims in this case over which this court has original
jurisdiction.  As such, the breach of contract claim would
substantially predominate over the claims that may proceed in
this action, and supplemental jurisdiction is properly declined
on that basis.  See 28 U.S.C. § 1367(c)(2).  The district judge
should dismiss Fernandez's breach of contract claim relating to
the denial of access to legal materials at NHDOC, without
prejudice to Fernandez's ability to assert that claim in an
action in state court.

      **G.**    **Toxicology Evidence**

         1.   Access to the Courts (Claim 7(a))

To assert a claim that he has suffered a violation of his
right of access to the courts, Fernandez must assert that the
defendants' actions caused him to suffer an actual injury in a
case that he has a right to litigate while incarcerated.  See
Lewis, 518 U.S. at 354.  In Cox, which remains pending,
Fernandez has claimed that his food was drugged at the Ely State
Prison in Nevada between February 19, 2014 and July 23, 2014.

See Cox, ECF No. 5, at 11-12.  Fernandez claims that the NHDOC
defendants delayed the collection and testing of biological
samples that, to be effective, would have had to have been
collected within one year of the food tampering Fernandez was
attempting to demonstrate.  Fernandez was transferred to the
NHSP in November 2015, more than a year after the food tampering
at issue in Cox had ended.  Fernandez has not alleged facts in
this court indicating how delays in allowing Fernandez to
undergo toxicology testing in New Hampshire resulted in any
actual injury in Cox.  Accordingly, the access to the courts
claim relating to Cox should be dismissed.

The court in Fernandez's second food-tampering case, Baca,
dismissed that matter on July 12, 2017, without prejudice, on
the grounds that Fernandez is prohibited from proceeding in
forma pauperis pursuant to 28 U.S.C. § 1915(g), and did not pay
the filing fee.  See Baca, ECF Nos. 3, 9.[7]  Nothing Fernandez has
asserted in this case suggests that having received the
toxicology testing he requested in May 2015 would have altered
or impacted the result in Baca.

Accordingly, Fernandez has failed to demonstrate any actual
injury to any civil case based on the denial of timely
toxicology testing.  The district judge, therefore, should

---

[7]Fernandez has appealed the dismissal of Baca to the Ninth
Circuit Court of Appeals.  See Fernandez v. Baca, No. 17-16525
(9th Cir., filed July 31, 2017).  That appeal is pending.

dismiss Claim 7(a), asserting a denial of access to the courts, based on the denial of toxicology testing.

### 2. Equal Protection (Claim 7(b))

Fernandez alleges that NHDOC Policy and Procedure Directive ("PPD") 6.53 provides a process by which inmates can obtain services of outside medical practitioners at the NHDOC. Fernandez claims that the existence of such a policy demonstrates that some inmates have been allowed to receive such services, and that therefore, the defendants' denial of Fernandez's request for an outside toxicologist to obtain and test biological specimens from Fernandez resulted in his being treated differently than other inmates and thus violated his equal protection rights.

To state an equal protection claim, Fernandez must demonstrate that he was discriminated against on an improper basis, or that he was treated differently from other similarly situated inmates. Nothing in Fernandez's allegations suggests that prison officials treated him differently than any similarly situated inmate, as there are no facts alleged in the complaint suggesting that he is similarly situated to inmates who have had their requests for outside medical services granted under the relevant PPD. Accordingly, the district judge should dismiss Claim 7(b), alleging a denial of equal protection.

### H.    Eleventh Amendment

Plaintiff has named the States of Nevada and New Hampshire and their agencies as defendants to claims for relief. Plaintiff's claims against those entities for damages and injunctive relief are barred by the Eleventh Amendment, and should be dismissed.  See Town of Barnstable v. O'Connor, 786 F.3d 130, 138 (1st Cir. 2015); New Hampshire v. Ramsey, 366 F.3d 1, 14 (1st Cir. 2004).  Those defendants should be dropped from this case.

## Preliminary Injunctive Relief

### I.    Injunction Requested[8]

Fernandez has filed a motion (Doc. No. 3) seeking a temporary restraining order and preliminary injunction seeking:

- an order prohibiting "the defendants, their employees, agents, attorneys, and others working in concert therewith" from transferring plaintiff back to Nevada;

- an order prohibiting defendants from taking any retaliatory action against him; and

- an order compelling defendants to provide plaintiff with additional storage space for, and meaningful access to, his legal materials during the pendency of this action.

Fernandez's requests for injunctive relief arise out of the

---

[8]In his initial motion for preliminary injunctive relief (Doc. No. 3), Fernandez sought relief concerning his access to sources of Nevada law at the New Hampshire State Prison. Fernandez has since withdrawn that portion of his motion.  See Doc. No. 11.

operative facts underlying the claims asserted in his complaint, set forth above.

## II.  **Discussion**

A plaintiff seeking preliminary injunctive relief "'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  Glossip v. Gross, 135 S. Ct. 2726, 2736 (2015) (citation omitted); see also Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011).  Demonstrating a likelihood of success on the merits is a prerequisite to obtaining preliminary injunctive relief.  See Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006) ("if the moving party cannot demonstrate that he is likely to succeed in his quest," preliminary injunctive relief is properly denied without further analysis).  The burden of proof is on the movant.  See Esso Std. Oil Co., 445 F.3d at 18.

For reasons stated in this Report and Recommendation, Fernandez has failed to state a claim upon which relief can be granted arising from NHDOC defendants' threats to return Fernandez to Nevada, or the deprivation of Fernandnez's legal materials.  Accordingly, Fernandez cannot demonstrate that he is likely to succeed on the merits of his claims, and the district

judge should deny Fernandez's request for injunctive relief based on the deprivation of his legal materials.

## Other Motions

Plaintiff has filed: "Motion for an Order to Clerk to Issue Summons and Effect Service by the United States Marshal's Office" (Doc. No. 4), and "Motion for Enlargement of Time in Which to Serve Defendants with the Complaint and Summons in this Action" (Doc. No. 15). Because the court recommends that all of the claims in this action be dismissed, the district judge, if she approves this Report and Recommendation, should deny the motions for service (Doc. No. 4) and to extend time for service (Doc. No. 15) as moot.

## Conclusion

For the reasons explained in this Report and Recommendation, the district judge should: dismiss this action in its entirety, without prejudice to Fernandez's ability to bring his state law claims in a state court action in a court of competent jurisdiction; and deny Fernandez's motions for preliminary injunctive relief (Doc. No. 3), service (Doc. No. 4), and an extension of time to serve the defendants (Doc. No. 15). Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed.

R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

December 4, 2017

cc:  Kevin Fernandez, pro se